IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LINDA GLASS ECKERT,

              Plaintiff,

vs.                                             Case No. 12-2142-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

              Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On August 27, 2010 administrative law judge (ALJ) Patricia E. Hartman issued her decision (R. at 11-20). Plaintiff alleges that she has been disabled since May 12, 2008 (R. at 11). Plaintiff is insured for disability insurance benefits through December 31, 2013 (R. at 13). At step one, the ALJ found that

plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 13). At step two, the ALJ found that plaintiff had the following severe impairment: degenerative disc disease (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff is able to perform past relevant work (R. at 18). In the alternative, at step five, the ALJ found that there are other jobs that exist in significant numbers in the national economy that the plaintiff can perform (R. at 18-20). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III. Did the ALJ err when evaluating the nature and extent of plaintiff's medical treatment?**

In evaluating plaintiff's credibility, the ALJ made the following findings:

> The course of medical treatment and the use of medication in this case are not consistent with disabling levels of pain. The claimant has not generally received the type of treatment one would expect for a totally disabled individual. The record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms. Moreover, the record reflects significant gaps in the claimant's history of treatment. The claimant asserts disability due to back pain. However, she did not seek physical therapy in order to improve pain or range of motion. Furthermore, she failed to follow up on medical recommendations and

5

>       infrequently received treatment.  Had the
>       claimant's pain and limited range of motion
>       risen to the disabling levels alleged, it is
>       likely the claimant would have sought
>       physical therapy for her back pain.
>       Therefore, the undersigned finds that the
>       course of treatment in this case does not
>       bolster the claimant's credibility with
>       respect to the degree of her pain and other
>       subjective complaints.

(R. at 16).

The court finds a number of problem's with this analysis by the ALJ.  First, the ALJ clearly relied on the infrequency of treatment by the ALJ to find her less credible.  However, the 10th Circuit, relying on the case of Thompson v. Sullivan, 987 F.2d 1482, 1489-90 (10th Cir. 1993), has repeatedly held that the inability to pay may justify a claimant's failure to pursue or seek treatment.  Threet v. Barnhart, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003); Norris v. Apfel, 215 F.3d 1337 (table), 2000 WL 504882 at *8 (10th Cir. Apr. 28, 2000); Smith v. Apfel, 149 F.3d 1191 (table), 1998 WL 321176 at *4 (10th Cir. June 8, 1998); Snead v. Callahan, 129 F.3d 131 (table), 1997 WL 687660 at *4 (10th Cir. Oct. 31, 1997); see also Eason v. Chater, 951 F. Supp. 1556, 1562 (D. N.M. 1996)(claimant should not be penalized for failing to seek treatment that they cannot afford); Hockenhull v. Bowen, 723 F. Supp. 555, 557 (D. Colo. 1989) (evidence of nontreatment is of little weight when

claimant's failure to seek medical treatment can be attributed to their inability to pay for such treatment).

While failure to seek treatment may be probative of severity, the ALJ has a basic duty of inquiry to ask the plaintiff why he/she did not seek treatment, or why it was sporadic.  Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003).  Similarly, SSR 96-7p states the following:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); cited with approval in Madron v. Astrue, 311 Fed. Appx. 170, 178 (10th Cir.

Feb. 11, 2009). The fact than an individual may be unable to afford treatment and may not have access to free or low-cost medical service is a legitimate excuse. <u>Madron</u>, 311 Fed. Appx. at 178; SSR 96-7p, 1995 WL 374186 at *8.

Plaintiff testified as follows at the hearing:

> Q (by counsel):…Linda, I want to talk a little bit about your medical treatment. Do you remember the last time you went to see a doctor?
>
> A (by plaintiff): It's been a while.
>
> Q: About how long has it been?
>
> A: I would say a year.
>
> Q: And, why haven't you been to see a doctor since then?
>
> A: I do not have the finances to go.
>
> Q: Do you have any medical insurance?
>
> A: No, I don't.
>
> Q: Do you have any State medical coverage?
>
> A: No.
>
> Q: You are also not taking any medications. Why is that?
>
> A: I don't have the money for the medications that the doctor gave me.

(R. at 43-44). However, this testimony was never mentioned by the ALJ in his decision. As SSR 96-7p makes clear, the ALJ must consider any explanation that a claimant may provide to explain infrequent or irregular medical treatment. As the case law

8

makes clear, the inability to pay may justify a claimant's failure to pursue or seek treatment.  The ALJ clearly erred by not considering the testimony of plaintiff that he lacked the finances and medical insurance or coverage to seek medical treatment or pay for medications.  Therefore, the case shall be remanded in order for the ALJ to consider the reasons offered by the plaintiff for not seeking treatment or obtaining medications.

Second, the ALJ stated that plaintiff did not seek physical therapy.  However, plaintiff testified as follows:

> Q (by ALJ): Have you had physical therapy for your back?
>
> A (by plaintiff): Yes.  And, it was very painful.  The doctor stopped it.  I went three times.

(R. at 36).  However, the ALJ failed to mention this testimony, which directly contradicts the assertion of the ALJ that she did not seek physical therapy.

Third, the ALJ asserted that plaintiff did not receive "the type of treatment one would expect for a totally disabled individual" and did not seek physical therapy (R. at 16).  In the case of <u>Morgan v. Astrue</u>, Case No. 08-1392-JTM (April 29, 2010; Doc. 16 at 16-17), the court faced the same issue as is before the court in this case.  The court held:

> **...the ALJ also relied on the fact that plaintiff had not had surgery or inpatient**

**hospitalization, and had not been referred to physical therapy**, when considering the medical evidence relating to plaintiff's RFC, including the opinions of Dr. Gillenwater (R. at 26; Doc. 13 at 7). **However, the ALJ did not cite to any evidence regarding the relevance or significance, if any, of the fact that plaintiff had not had surgery, inpatient hospitalization, or physical therapy.** In the case of Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ noted that the claimant did not require an assistive device for his neck. The court held that there is no evidence that any physician recommended such a device or suggested that one would have provided any pain relief. The court stated that an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. As noted above, the ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan [v. Barnhart], 212 F. Supp.2d [1248, 1262 (D. Kan. 2002)].

  **In the absence of any medical evidence indicating the relevance or significance of the fact that plaintiff did not receive certain treatments, the ALJ is in no position to render a medical judgment regarding the relevance or significance of the fact that plaintiff did not receive certain treatments.** Park v. Astrue, Case No. 07-1382-MLB, 2008 WL 4186871 at *5 (D. Kan. Sept. 9, 2008, Doc. 17 at 11-12); see Newman v. Astrue, Case No. 08-1391-JTM (D. Kan. Feb. 2, 2010; Doc. 18 at 10-12)(**ALJ erred by failing to cite to any medical evidence to support his assertion that plaintiff had not received the type of treatment one would expect for a totally disabled individual**); Burton v. Barnhart, Case No. 06-1051-JTM (D. Kan. Nov. 1, 2006; Doc. 12 at 15)(ALJ erred by relying on the lack of certain types of treatment in the absence of any evidence that such treatment

> was recommended, would have lessened the claimant's limitations, or provided pain relief); Mazza v. Barnhart, Case No. 06-1018-JTM (D. Kan. Oct. 25, 2006; Doc. 13 at 20)(same). For this reason, **the ALJ erred by relying on the absence of surgery, hospitalization, or physical therapy without any medical evidence regarding the relevance or significance of the lack of such treatment.**

(emphasis added); quoted with approval in Dannels v. Astrue, Case No. 10-1416-SAC (D. Kan. Dec. 20, 2011; Doc. 19 at 9-11)(wherein the ALJ had stated that the claimant had not generally received the type of medical treatment one would expect for a totally disabled individual).

As in the above cases, the ALJ asserted that plaintiff had not received the type of treatment one would expect for a totally disabled individual and that a person with pain and a limited range of motion that rose to disabling levels would have likely sought physical therapy for their pain. However, the ALJ cited to no evidence or medical authority in support of these assertions, and did not cite to any statute, regulation or ruling in support of these assertions. For the reasons set forth above, the ALJ clearly erred by relying on these statements as bases for discounting her credibility.

Fourth, in the case of Essman v. Astrue, Case No. 09-4001-SAC (D. Kan. Dec. 16, 2009), the court held that:

> **...before the ALJ may rely on a claimant's failure to pursue treatment or take medication** as support for his determination of noncredibility, he or she should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). This analysis applies when noncompliance with a physician's recommendation is used as part of the credibility determination. Piatt v. Barnhart, 231 F. Supp.2d 1128, 1129 (D. Kan. Nov. 15, 2002)(Robinson, J.); Silverson v. Barnhart, Case No. 01-1190-MLB (D. Kan. May 14, 2002)(Belot, J.); Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1294-1296 (D. Kan. (April 15, 2002)(Crow, S.J.).
>
> Defendant contends that the Frey test is not applicable in this case. However, the ALJ appears to have discounted plaintiff's credibility because he quit taking prescription medications. Thus, this is not a situation where the Frey test is not required because the treatment or medication had not been prescribed, and the ALJ is simply considering what attempts the claimant made to relieve their pain. See McAfee v. Barnhart, 324 F. Supp.2d 1191, 1201 (D. Kan. 2004); Jesse v. Barnhart, 323 F. Supp.2d 1100, 1108 (D. Kan. 2004); Billups v. Barnhart, 322 F. Supp.2d 1220, 1226 (D. Kan. 2004).

Essman, Doc. 23 at 20-21, emphasis added); quoted with approval in Alfrey v. Astrue, Case No. 11-4117-SAC (D. Kan. Oct. 24, 2012; Doc. 15 at 17-18). The ALJ clearly erred by relying on the failure to pursue treatment ("she failed to follow up on

medical recommendations and infrequently received treatment" (R. at 16)) in support of her credibility determination without undertaking the above analysis.

**IV. Did the ALJ err in his discussion of plaintiff's daily activities when evaluating her ability to work?**

In his decision, the ALJ stated the following:

> The claimant's daily activities are consistent with the above residual functional capacity and are inconsistent with the alleged symptoms of disability. The claimant has described daily activities, which are not limited to the extent one would expect, given the allegations of disability and limitations. The evidence of record indicates that the claimant maintains a rather independent lifestyle. She can care for herself and her personal hygiene with some limitations. She participates in household chores and does her laundry once a week. She enjoys going outside once day, rides in a car, and can drive a car independently. The claimant shops once a month and can pay bills and count change independently. She continues to participate in her hobbies such as scrapbooking, visiting friends, and talking on the phone. She enjoys attending church on Sundays and does so alone. Although the claimant does in fact have numerous impairments that affect her daily life, they have not reached such severity to impair [her] activities shopping and laundry.

(R. at 17).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not

13

considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2012 at 398).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in

14

>which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In <u>Rainey v. Dep't of Health & Human Servs.</u>, 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In <u>Baumgarten v. Chater</u>, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work**.'" Id. (quoting <u>Hogg v. Shalala</u>, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner
>
>>**that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity**.
>
>   <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).

15

According to the regulation, activities such as taking care of yourself, household tasks, hobbies, or social programs are generally not considered to constitute substantial gainful activity.  As the case law makes clear, the ability to perform light housework, visit with friends, or attend church provides little or no support for a finding that a claimant can perform full-time competitive work.  The daily activities, as described by the ALJ, are not inconsistent with plaintiff's alleged claims of disability.

**V.   Did the ALJ err by failing to discuss the weight attached to the opinions of Dr. Fishman?**

Dr. Fishman prepared a consultative examination of the plaintiff on May 6, 2009 and offered opinions regarding plaintiff's RFC (R. at 319-321).  Some of his opinions regarding plaintiff's limitations do not appear in the ALJ's RFC findings, including his opinion that she would not be able to tolerate prolonged sitting, standing, and walking (R. at 321, 15).  However, the ALJ, although she generally mentioned the opinions of Dr. Fishman (R. at 16), never indicated what weight, if any, she accorded to the opinions of Dr. Fishman.

According to SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

16

1996 WL 374184 at *7. Defendant concedes that the ALJ did not explain why the all of the opinions of Dr. Fishman were not included in the ALJ's RFC findings, but argues that the omission was harmless error (Doc. 15 at 6). In light of the errors noted above, the court will not address the issue of harmless error. When this case is remanded, the ALJ shall evaluate all the medical opinions regarding plaintiff's RFC in accordance with SSR 96-8p.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 7th day of February, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge